UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CURTIS KERN, BX3065,<br><br>Plaintiff,<br><br>v.<br><br>DR. D. GOLLER, et al.,<br><br>Defendant(s). | Case No. 24-cv-07094-CRB  (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 28, 47 & 50) |

Plaintiff, a prisoner at Pelican Bay State Prison (PBSP), filed a pro se complaint under 42 U.S.C. § 1983 alleging that several doctors at PBSP were deliberately indifferent to his serious medical needs in connection with the treatment of a lipoma in his left forearm that caused him pain until it was removed in June 2025. Plaintiff specifically alleges that PBSP doctors D. Goller, Jenny Hwang, James Marcelo, Michelle Keeter, Andrew Turner, and Karla Gomez Pimentel improperly canceled or delayed previously scheduled pre-op and specialist appointments to remove the lipoma and treated him only with NSAIDs to which he is allergic and caused bleeding in his stool. The court screened the complaint and found that plaintiff's allegations, liberally construed, appear to state an arguably cognizable claim under § 1983 for deliberate indifference to serious medical needs against the named doctor defendants and ordered them served.

Defendant doctors Hwang, Marcelo, Keeter, Turner and Gomez Pimentel (Defendants) now move for summary judgment on the grounds that there are no material facts in dispute and that they are entitled to judgment as a matter of law.[1] They also claim that they are entitled to qualified immunity. Plaintiff has filed an opposition, and Defendants have filed a reply. Plaintiff also has filed a cross-motion for summary judgment to which Defendants have filed an opposition.

---

[1] Defendant Dr. Goller has not been served despite multiple efforts by the court and the United States Marshal Service (USMS) to serve him at different locations.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed:

On March 21, 2024, plaintiff was transferred from Sacramento County Jail to North Kern State Prison (NKSP), a reception center for those newly incarcerated within the California Department of Corrections and Rehabilitation (CDCR). Feinberg Decl. (ECF No. 28-6) ¶ 10. That same day, NKSP medical staff reviewed plaintiff's medical records and saw plaintiff for a reception center initial medical history and physical. The medical summary sent with plaintiff from Sacramento County Jail noted an allergic reaction to "NSAIDS 6 (IBUPROFEN) (Mild)" and a "lipoma of L arm." Id.[2] Medical staff documented that plaintiff also reported having a lipoma on his left forearm since October 2022 and that he had an MRI of the lipoma performed. Id. ¶ 11. Plaintiff was provided with an authorization for release of information for CDCR to obtain those outside medical records. Id.

On March 25, 2024, NKSP medical records department received a fax from San Joaquin General Hospital (SJGH) that included a report of an MRI performed on March 31, 2023, of plaintiff's left upper extremity to evaluate a soft tissue mass of his proximal left forearm. Id. ¶ 12. The MRI report showed "a lipoma measuring 3.9 x 3 x 1.4 cm just deep to the brachioradialis muscle." Id.

On March 25, 2024, plaintiff submitted a Health Care Services Request form (commonly referred to as a CDCR Form 7362) complaining, among other things, of "pain in his left bicep and in the mass in his left forearm, for which 'Tylenols do nothing to help that's why I haven't taken them in over a year,' as well as a sensation of chest fluttering." Id. ¶ 13.

On April 4, 2024, plaintiff was seen by a doctor at NKSP in connection with his Form 7362 health care request and to review the records from SJGH that included the report of his March 2023 MRI of his lipoma. At the visit, the doctor noted that plaintiff was requesting "excision of the lipoma," and submitted a referral to surgery for plaintiff to be "evaluated" for his

---

[2] A lipoma is a "common, benign, non-cancerous growth that forms in the fatty layer of tissue beneath the skin" and "consists of fat cells enclosed by a thin fibrous capsule" that is generally "soft" and "painless." Feinberg Decl. ¶ 9.

requested excision. Id. ¶ 14. Later that same day, the request was approved as "routine priority," meaning that that it was "expected to be completed within 46 to 90 days, or by July 3, 2024." Id.

On or about May 20, 2024, plaintiff began a transfer from NKSP to PBSP, with a layover at California State Prison, Sacramento (CSP – SAC). Id. ¶ 15.

On May 21, 2024, scheduling staff at CSP – SAC and PBSP exchanged messages noting that plaintiff had a surgery evaluation to be completed by July 3, 2024. Id. ¶ 16.

A.    Visit with Dr. Hwang

On May 28, 2024, Dr. Hwang saw plaintiff (now at PBSP) for the first and only time via a telemedicine appointment. Feinberg Decl. ¶ 17; Hwang Decl. (ECF No. 28-3) ¶¶ 4-5. Plaintiff reported chronic intermittent pain where his lipoma was located but denied any significant changes to the lipoma. Id. ¶ 5 & Ex. A. Dr. Hwang evaluated plaintiff with the assistance of an on-site nurse. During the evaluation, plaintiff denied having chest pains or palpitations, abdominal pain, blood in his stool, joint pain (aside from chronic knee pain), or any skin changes or lumps. Id. With the assistance of the on-site nurse, Dr. Hwang took plaintiff's vitals and measurements and noted that plaintiff was in no apparent distress. Id. Dr. Hwang evaluated plaintiff's left forearm and observed a well circumscribed, soft lipoma that was not tender to palpation — assessed by using one's hands to check the body during a physical exam to assess the size, consistency, texture, location, and tenderness of organs or body parts — and exhibited no erythema. Id. ¶ 6 & Ex. A. Dr. Hwang tried to discuss conservative pain management options with plaintiff but plaintiff informed Dr. Hwang that he applied Diclofenac gel — an NSAID in the same family of pain medication as Ibuprofen — as needed and that the Diclofenac gel gave him "temporary relief." Feinberg Decl. ¶ 17; accord Hwang Decl. ¶ 6 & Ex. A. Dr. Hwang did not prescribe any medication to plaintiff for his pain because the Diclofenac gel, which was prescribed sometime prior to Dr. Hwang's visit with plaintiff, appeared to be effective. Id.

Dr. Hwang discussed her findings and answered plaintiff's questions regarding his lipoma and reassured plaintiff that he had a surgery consultation pending to evaluate his lipoma. Id. Dr. Hwang ordered a follow-up appointment with plaintiff's primary care physician to go over plaintiff's concerns regarding his pending surgery evaluation and advised plaintiff to continue

with his current pain management option, applying Diclofenac gel as needed, until he followed up with his primary care physician regarding his pending surgery evaluation. Id. Dr. Hwang did not cancel, delay or otherwise interfere with the scheduling of plaintiff's pending surgery consultation to evaluate his lipoma. Id. ¶ 7; accord Feinberg Decl. ¶ 41.

B.      Visit with Dr. Marcelo

On June 10, 2024, Dr. Marcelo saw plaintiff for the first and only time via a telemedicine appointment. Feinberg Decl. ¶ 18. Plaintiff reported left arm pain and that his pain medication was not working but advised Dr. Marcelo that he was "refusing further medications until he sees the specialist to remove his lipoma." Id. Dr. Marcelo evaluated plaintiff's left forearm with the assistance of an on-site medical assistant and took plaintiff's vitals and measurements. Marcelo Decl. (ECF No. 28-1) ¶ 6 & Ex. A. Dr. Marcelo observed that plaintiff's left forearm and elbow did not have any swelling or redness but had a soft, small lipoma. Id. Dr. Marcelo also observed during the physical exam that plaintiff was able to bend his left elbow without approximate difficulty and did well overall during the assessment. Id. Dr. Marcelo determined that plaintiff had a normal and harmless lipoma, prescribed plaintiff Tylenol for his reported pain, and reassured plaintiff that a surgery consultation to evaluate his lipoma was pending. Id. Dr. Marcelo did not cancel, delay or otherwise interfere with the scheduling of plaintiff's pending surgery consultation to evaluate his lipoma. Id. ¶ 8; accord Feinberg Decl. ¶ 42.

C.      Visit with Dr. Keeter

On June 12, 2024, Dr. Keeter saw plaintiff at PBSP's Triage and Treatment Area (TTA) – which functions as an urgent care center – for evaluation of complaints of chest pain. Feinberg Decl. ¶ 19. During the visit, plaintiff complained of chest pain and pulsating pain in his left arm (where he had a lipoma) while experiencing chest pain. Id.; Keeter Decl. (ECF No. 28-5) ¶ 4 & Ex. A. Dr. Keeter conducted a physical exam of plaintiff, who appeared alert and oriented. Id. Plaintiff's respiratory rate was normal, with no murmurs, rubs, or gallop sound in his chest. Id. Dr. Keeter noted that plaintiff reported episodes of chest pain that could occur at rest or activity and last about 30 to 40 minutes, either resolving on its own or with positional changes. Feinberg Decl. ¶ 19. Dr. Keeter performed a diagnostic electrocardiogram (EKG) and documented a

United States District Court
Northern District of California

4

United States District Court
Northern District of California

normal EKG showing no abnormal rhythms or other cardiac abnormalities.  Keeter Decl. ¶ 4 & Ex. A.  Because plaintiff's blood pressure was elevated, Dr. Keeter administered one dose of Clonidine to improve his blood pressure and treat his chest pain.  Id.  Dr. Keeter's impression was that plaintiff's chest pain was "likely noncardiac" and advised that he be discharged from TTA and scheduled for weekly blood pressure checks for one month.  Id. Ex. A; Feinberg Decl. ¶ 19. Dr. Keeter also reassured plaintiff that he had a referral in place for a surgery consultation for his lipoma.  Keeter Decl. ¶ 4.  Dr. Keeter did not cancel, delay or otherwise interfere with the scheduling of plaintiff's pending surgery consultation to evaluate his lipoma.  Id. ¶ 7; accord Feinberg Decl. ¶ 43.

D.      MRI Order

On June 13, 2024, Dr. Marcelo received a message that the local surgeon who received the referral from NKSP to evaluate plaintiff's lipoma recommended that an MRI of plaintiff's left forearm be completed prior to the evaluation and was asked to place the MRI order.  Feinberg Decl. ¶ 20.  That same day, Dr. Marcelo ordered the recommended MRI of plaintiff's left forearm. Id.

E.      Visit with Dr. Turner

On June 19, 2024, Dr. Turner saw plaintiff for the first and only time.  Feinberg Decl. ¶ 21. At the visit, plaintiff reported that his lipoma was painful and, in his opinion, was exhibiting a "stronger pulse" and a "throbbing sensation." Turner Decl. (ECF No. 28-4) ¶ 4 & Ex. A.  Dr. Turner physically examined plaintiff and determined that he was not in acute distress.  Id.  Dr. Turner discussed with plaintiff his March 2023 MRI results – documenting a lipoma measuring around 3.9 x 3 x 1.4 cm in his left forearm – and reassured him that a lipoma is a slow-growing, fatty lump just below the skin that is most often "non-tender and harmless."  Id. ¶ 5.  Dr. Turner also explained to plaintiff that he had a new MRI to reevaluate his lipoma scheduled for the next day – June 20, 2024 – and that a surgery consultation referral was already in place.  Id.  Dr. Turner did not cancel, delay or otherwise interfere with the scheduling of plaintiff's pending surgery consultation to evaluate his lipoma.  Id. ¶ 6; accord Feinberg Decl. ¶ 44.

F.      MRI Report

On June 20, 2024, plaintiff received an MRI of his left forearm.  Feinberg Decl. ¶ 22; Marcelo Decl. ¶ 6 & Ex. B.  The MRI was performed and read by Dr. Goller.  Dr. Goller reported his findings on June 20, 2024, as follows:

> The signal throughout the visualized muscles and tendons appears normal.  No soft tissue injury is seen.  No soft tissue mass is identified.
>
> The signal throughout the visualized osseous structures appears normal.  No bone marrow edema is present.

Id. Ex. B; accord Feinberg Decl. ¶ 22 ("report dated June 20, 2024 stated in relevant part that 'no soft tissue mass is identified'").  That same day, Dr. Marcelo wrote plaintiff with the results of the MRI: "Your test results are essentially within normal limits or are unchanged and no provider follow-up is required."  Marcelo Decl. Ex. C.

G.      Visit with Dr. Gomez Pimentel

On July 25, 2024, Dr. Gomez Pimentel saw plaintiff for the first and only time via a telemedicine visit.  Feinberg Decl. ¶ 29; Gomez Pimentel Decl. ¶¶ 4, 5.  Dr. Gomez Pimentel was following up with plaintiff in response to a 14-day follow-up requested by a nurse on July 11, 2024, regarding plaintiff's complaints of pain near where his lipoma was located.  Feinberg Decl. ¶ 29; Gomez Pimentel Decl. ¶ 5.  At the visit, Dr. Gomez Pimentel documented the history of plaintiff's lipoma from his chart and from talking to him.  Dr. Gomez Pimentel also noted a discrepancy between the report of the March 2023 MRI finding a lipoma on plaintiff's left forearm and the report of the June 2024 MRI finding no soft tissue mass on plaintiff's left forearm.  Id. Ex. A; Feinberg Decl.  ¶ 29.  Dr.  Gomez Pimentel further noted that the images from the June 2024 MRI in fact showed a "mass over the forearm area."  Gomez Pimentel Decl. Ex. A; Feinberg Decl. ¶ 29.  Dr. Gomez Pimentel reassured plaintiff that a referral for a surgery evaluation of his lipoma was pending and that she would "follow up" on the referral and inquire on "when" plaintiff's evaluation with surgery "would take place." Gomez Pimentel Decl. ¶ 5 & Ex. A.  In the meantime, Dr.  Gomez Pimentel advised plaintiff to continue with his current conservative pain management options already ordered for him, including the topical NSAID, Diclofenac gel, that had been documented to provide plaintiff temporary relief.  Id.

Dr. Gomez Pimentel did not cancel, delay or otherwise interfere with the scheduling of plaintiff's pending surgery consultation to evaluate his lipoma. Id. ¶ 9; accord Feinberg Decl. ¶ 45. After the July 25, 2024, visit with plaintiff, Dr. Gomez Pimentel instead submitted another surgery consultation referral request to evaluate plaintiff's lipoma, noting in the new request the discrepancies she had observed between the 2023 and 2024 MRI reports. Gomez Pimentel Decl. Ex. B; Feinberg Decl. ¶ 31. On August 12, 2024, the request was modified by nondefendant Dr. Yeh with a note to "please send a message to the rad tech to inform radiologist to re-review the MRI. A lipoma or other mass should be picked up on MRI." Gomez Pimentel Decl. Ex. B; Feinberg Decl. ¶ 32.

### H.    Revision of MRI Report

On August 15, 2024, Dr. Goller added an addendum to his reading/report of the June 20, 2024, MRI of plaintiff's left forearm. Feinberg Decl. ¶ 33. This addendum states in relevant part,

> Comparison is now made with an outside MRI dated 3/31/2023. A lipoma measuring approximately 4.9 x 2.2 x 4.0 cm is present deep to the brachial radialis muscle.

Marcelo Decl. Ex. B.

On August 30, 2024, Dr. Gomez Pimentel submitted yet another surgery consultation referral request to evaluate plaintiff's lipoma, with supporting 2023 and revised 2024 MRI reports showing a lipoma in plaintiff's left forearm. Gomez Pimentel Decl. Ex. C.

### I.    Surgery Consultation and Removal of Lipoma

On September 25, 2024, plaintiff saw nondefendant Dr. Schultz for a general surgery consultation. Feinberg Decl. ¶ 37. At this consultation, Dr. Schultz documented counseling plaintiff that "lipomas are benign fatty tumors. They usually remain stable and are asymptomatic. No treatment is necessary." Id. But if plaintiff wanted to pursue further evaluation and treatment, he would need to see an orthopedic surgeon because the MRI showed that the lipoma was beneath the brachioradialis muscle. Id.

On October 17, 2024, PBSP medical staff approved a referral for an orthopedic surgery consultation for plaintiff, but the consultation could not be scheduled within the compliance date of January 14, 2025, due to "resource constraints." Id. ¶¶ 38, 39.

On June 24, 2025, plaintiff's lipoma was removed at SJGH by nondefendant orthopedic surgeon Dr. Dowbak. Id. ¶ 40. The pathology report noted "benign adipose tissue consistent with lipoma." Id.

**DISCUSSION**

A.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, [as is the case here,] the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

8

Id. at 249-50.

When the parties file cross-motions for summary judgment, the court must consider all the evidence submitted in support of the motions to evaluate whether a genuine dispute of material fact exists precluding summary judgment for either party. The Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

B.    Analysis

1.    Motion and Cross-Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment and qualified immunity from plaintiff's claim of deliberate indifference to serious medical needs under § 1983. Under Saucier v. Katz, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over, and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks, "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.[3]

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to a prisoner's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). A medical need

---

[3]Although the Saucier sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, considering the particular circumstances of each case. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

United States District Court
Northern District of California

is serious if failure to treat it will result in "significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (citation and internal quotations omitted). A prison official is "deliberately indifferent" to that need if he "knows of and disregards an excessive risk to inmate health." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Neither negligence nor gross negligence is enough. Id. at 835–36 n.4.

A difference of opinion between a prisoner and a physician concerning appropriate medical care does not amount to deliberate indifference. Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012), overruled on other grounds by Peralta, 744 F.3d 1076; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another generally is insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004). To prevail on an Eighth Amendment deliberate indifference claim involving choices between alternative courses of treatment, a prisoner-plaintiff must show that the course of treatment that the doctor-defendants chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Id. at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

To prevail on a § 1983 claim for damages against an individual defendant, a prisoner-plaintiff must show that the defendant's deliberate indifference was the "actual and proximate cause" of the deprivation of plaintiff's Eighth Amendment rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). The "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." Id. at 633.

Defendants argue that they are entitled to summary judgment on plaintiff's claim of deliberate indifference to serious medical needs because plaintiff was provided with appropriate medical care for his lipoma and pain he associated with his lipoma, and no individual defendant consciously disregarded an excessive risk to plaintiff's health.

a.    Dr. Hwang

The evidence in the record shows that Dr. Hwang saw plaintiff only once, on May

10

28, 2024.  At this telemedicine visit, Dr. Hwang evaluated plaintiff's left forearm with the assistance of an on-site nurse and observed a well circumscribed, soft lipoma that was not tender to palpation and exhibited no erythema.  Dr. Hwang reviewed plaintiff's medical record and reassured him that he had a surgery consultation pending to evaluate his lipoma and also addressed plaintiff's complaints of pain.  Plaintiff reported to Dr. Hwang that he was previously prescribed Diclofenac gel and applied it to his lipoma as needed and that it provided him with temporary pain relief.  Dr. Hwang ordered a follow-up appointment with plaintiff's primary care physician to go over plaintiff's concerns regarding his pending surgery evaluation and advised plaintiff to continue with his current pain management option, applying Diclofenac gel as needed, until he followed up with his primary care physician regarding his pending surgery consultation.

Plaintiff has not set forth any probative evidence that Dr. Hwang's treatment plan was medically unacceptable under the circumstances and that Dr. Hwang consciously disregarded an excessive risk to plaintiff's health.  See Toguchi, 391 F.3d at 1058.  The evidence in the record makes clear that lipomas are "harmless" and "do not require treatment" unless causing pain, and that Dr. Hwang's treatment decision to have plaintiff continue using Diclofenac gel for pain relief until he followed up with his primary care physician regarding his pending surgery evaluation was "medically acceptable" and "reasonable" under the circumstances because Diclofenac gel was reportedly effective and is much safer than NSAIDs taken by mouth.  Feinberg Decl. ¶ 46.

Nor has plaintiff set forth any probative evidence that Dr. Hwang improperly canceled, delayed and/or interfered with previously scheduled pre-op and specialist appointments to remove plaintiff's lipoma.  The evidence in the record shows that Dr. Hwang reassured plaintiff that he had a surgical consultation pending to evaluate his lipoma and ordered a follow up with plaintiff's primary care physician to go over plaintiff's concerns regarding his pending surgery evaluation.  Nothing in the record suggests that Dr. Hwang canceled/delayed/interfered with plaintiff's surgery evaluation.  Accord id. ¶ 41 (claim that Dr. Hwang improperly canceled/delayed/ interfered with scheduled pre-op and specialist appointment to remove lipoma not supported by medical record).

Defendants are entitled to summary judgment on plaintiff's § 1983 claim of deliberate indifference to serious medical needs against Dr. Hwang.  No reasonable jury could find based on

United States District Court
Northern District of California

the evidence in the record that Dr. Hwang knew of and disregarded an excessive risk to plaintiff's health.  See Farmer, 511 U.S. at 837.[4]

    b.  Dr. Marcelo

    The evidence in the record shows that Dr. Marcelo saw plaintiff only once, on June10, 2024.  At this telemedicine visit, Dr. Marcelo evaluated plaintiff's left forearm with the assistance of an on-site medical assistant and observed that plaintiff's left forearm and elbow did not have any swelling or redness but had a soft, small lipoma.  Dr. Marcelo determined that plaintiff had a normal and harmless lipoma, prescribed plaintiff Tylenol for his reported pain, and reassured plaintiff that a surgery consultation to evaluate his lipoma was already pending.

    On June 13, 2024, Dr. Marcelo ordered an MRI of plaintiff's left forearm as requested that same day by the surgeon who received the referral to evaluate plaintiff's lipoma.  An MRI of plaintiff's left forearm was performed, read and reported by Dr. Goller on June 20, 2024.  While Dr. Goller added an addendum to his report on August 15, 2024, clarifying that a lipoma was present deep to the brachial radialis muscle, the initial June 20, 2024, report sent to Dr. Marcelo stated in relevant part that "no soft tissue mass is identified."  Dr. Marcelo wrote plaintiff on June 20, 2024, the same day Dr. Marcelo received the initial June 20, 2024, report, "Your test results are essentially within normal limits or are unchanged and no provider follow-up is required."

    Plaintiff has not set forth any probative evidence that Dr. Marcelo's treatment plan after the June 10, 2024, telemedicine visit – prescribed Tylenol for pain as needed until referral for surgery evaluation of lipoma takes place – was medically unacceptable under the circumstances and that Dr. Marcelo consciously disregarded an excessive risk to plaintiff's health.  See Toguchi, 391 F.3d at 1058.  The evidence in the record makes clear that lipomas are "harmless" and "do not require treatment" unless causing pain, and that Dr. Marcelo's treatment decision to prescribe him the analgesic Tylenol, in addition to the Diclofenac gel plaintiff was already using, as needed until

---

[4] Dr. Hwang also is entitled to qualified immunity from damages because a reasonable health care provider could have believed that his or her conduct – ordering follow-up appointment with plaintiff's primary care physician to go over plaintiff's concerns regarding pending surgery evaluation and advising plaintiff to continue with current pain management option, applying Diclofenac gel as needed, until he followed up with primary care physician regarding pending surgery evaluation – was lawful under the circumstances.  See Saucier, 533 U.S. at 201-02.

United States District Court
Northern District of California

the referral for surgery evaluation takes place was "medically acceptable" and "reasonable" under the circumstances.   Feinberg Decl. ¶ 46.

Nor has plaintiff set forth any probative evidence that Dr. Marcelo improperly canceled, delayed and/or interfered with previously scheduled pre-op and specialist appointments to remove plaintiff's lipoma.  The evidence in the record shows that Dr. Marcelo promptly ordered the MRI the surgeon requested before evaluating plaintiff's lipoma and promptly shared the MRI results with plaintiff.  Nothing in the record suggests that Dr. Marcelo canceled/delayed/interfered with plaintiff's surgery evaluation.  Accord id. ¶ 42 (claim that Dr. Marcelo improperly canceled/ delayed/interfered with scheduled pre-op and specialist appointment to remove lipoma not supported by medical record).

The record does suggest that Dr. Marcelo missed the discrepancy between the March 2023 MRI report finding a lipoma on plaintiff's left forearm and Dr. Goller's initial June 2024 MRI report finding no soft tissue mass on plaintiff's left forearm and that, had Dr. Marcelo noticed it and asked Dr. Goller to review his initial report before Dr. Gomez Pimentel did so on July 25, 2024, and Dr. Goller amended his report on August 15, 2024, plaintiff may have received his surgery consultation a month or so earlier than he did.  But unfortunately for plaintiff, it's well established that an "official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to infliction of punishment in violation of the Eighth Amendment. Farmer, 511 U.S. at 838.  Put simply, plaintiff may have a claim for negligence or gross negligence under California law against Dr. Marcelo but that's not enough for relief under § 1983 for violation of the Eighth Amendment.  See id. at 835–36 n.4.

Defendants are entitled to summary judgment on plaintiff's § 1983 claim of deliberate indifference to serious medical needs against Dr. Marcelo.  No reasonable jury could find based on the evidence in the record that Dr. Marcelo knew of and disregarded an excessive risk to plaintiff's health.  See id. at 837.

c.      Dr. Keeter

The evidence in the record shows that Dr. Keeter saw plaintiff only once, on June 12, 2024.  At this TTA visit, Dr. Keeter addressed plaintiff's complaint of chest pain and pulsating

13

United States District Court
Northern District of California

pain in his left arm.  Dr. Keeter examined plaintiff and conducted an EKG.  Plaintiff's respiratory rate was normal, with no murmurs, rubs, or gallop sound in his chest, and the EKG showed no abnormal rhythms or other cardiac abnormalities.  But because plaintiff's blood pressure was elevated, Dr. Keeter administered one dose of Clonidine to improve his blood pressure and treat his chest pain.  Dr. Keeter' concluded that plaintiff's chest pain was not cardiac and advised that he be discharged from TTA and scheduled for weekly blood pressure checks for one month.  Dr. Keeter reassured plaintiff that he had a referral in place for a surgery consultation for his lipoma.

Plaintiff has not set forth any probative evidence that Dr. Keeter's treatment plan after the June 12, 2024, TTA visit – administered one dose of Clonidine to improve plaintiff's blood pressure and treat his chest pain and advised that plaintiff be scheduled for weekly blood pressure checks for one month – was medically unacceptable under the circumstances and that Dr. Keeter consciously disregarded an excessive risk to plaintiff's health.  See Toguchi, 391 F.3d at 1058.  The evidence in the record makes clear that Dr. Keeter properly addressed an episode of chest pain and elevated high blood pressure and reassured plaintiff that he had a referral pending for a surgery consultation for his lipoma.  It also makes clear that this was "reasonable and comported with medically acceptable standards of care." Feinberg Decl. ¶ 46.  It was not "appropriate" or medically necessary for Dr. Keeter to have addressed the treatment plan for plaintiff's lipoma during the June 12, 2024, TTA visit.  Id. ¶ 43.

Nor has plaintiff set forth any probative evidence that Dr. Keeter improperly canceled, delayed and/or interfered with previously scheduled pre-op and specialist appointments to remove plaintiff's lipoma.  The evidence in the record shows that Dr. Keeter addressed plaintiff's chest pain and elevated blood pressure and reassured him that he had a referral pending for a surgery consultation for his lipoma.  Nothing in the record suggests that Dr. Keeter canceled/delayed/ interfered with plaintiff's surgery evaluation.  Accord id. (claim that Dr. Keeter improperly canceled/ delayed/interfered with scheduled pre-op and specialist appointment to remove lipoma not supported by medical record).

Defendants are entitled to summary judgment on plaintiff's § 1983 claim of deliberate indifference to serious medical needs against Dr. Keeter.  No reasonable jury could find based on

the evidence in the record that Dr. Keeter knew of and disregarded an excessive risk to plaintiff's health.  See Farmer, 511 U.S. at 837.[5]

        d.      Dr. Turner

The evidence in the record shows that Dr. Turner saw plaintiff only once, on June 19, 2024.  At this visit, Dr. Turner addressed plaintiff's complaints of a pulsing, throbbing sensation and pain around his lipoma.  Dr. Turner noted that plaintiff was scheduled for a repeat MRI to reevaluate his lipoma the following day (June 20, 2024) and that a surgical consultation referral was already in place.  Dr. Turner examined plaintiff, determined that he was not in acute distress, and reassured him that a lipoma is a slow-growing, fatty lump just below the skin that most often is  harmless and does not require medical treatment.

Plaintiff has not set forth any probative evidence that Dr. Turner's treatment plan after the June 19, 2024, visit – continue existing treatment plan for plaintiff's lipoma (repeat MRI to reevaluate lipoma (scheduled for next day), surgical consultation and pain medication as needed) – was medically unacceptable under the circumstances and that Dr. Turner consciously disregarded an excessive risk to plaintiff's health.  See Toguchi, 391 F.3d at 1058.  There is no indication that plaintiff informed Dr. Turner that his pain medication, Diclofenac gel, was no longer working and that Dr. Turner consciously disregarded plaintiff's pain.  Accord Feinberg Decl. ¶ 44 (plaintiff "does not appear to have requested any change in pain medication at this visit").  The evidence in the record makes clear that the care Dr. Turner provided plaintiff was "reasonable and comported with medically acceptable standards of care." Id. ¶ 46.

Nor has plaintiff set forth any probative evidence that Dr. Turner improperly canceled, delayed and/or interfered with previously scheduled pre-op and specialist appointments to remove plaintiff's lipoma.  The evidence in the record shows that Dr. Turner encouraged plaintiff to proceed with the repeat MRI to reevaluate his lipoma scheduled for the next day and subsequent

---

[5] Dr. Keeter also is entitled to qualified immunity from damages because a reasonable health care provider could have believed that his or her conduct – administered one dose of Clonidine to improve plaintiff's blood pressure and treat his chest pain and advising that plaintiff be scheduled for weekly blood pressure checks for one month and reassuring plaintiff that he had a referral pending for a surgery consultation for his lipoma – was lawful under the circumstances. See Saucier, 533 U.S. at 201-02.

surgical consultation. Nothing in the record suggests that Dr. Turner canceled/delayed/interfered with plaintiff's surgery evaluation. Accord id. ¶ 44 (claim that Dr. Turner improperly canceled/delayed/interfered with scheduled pre-op and specialist appointment to remove lipoma not supported by medical record).

Defendants are entitled to summary judgment on plaintiff's § 1983 claim of deliberate indifference to serious medical needs against Dr. Turner. No reasonable jury could find based on the evidence in the record that Dr. Turner knew of and disregarded an excessive risk to plaintiff's health. See Farmer, 511 U.S. at 837.[6]

e.      Dr. Gomez Pimentel

The evidence in the record shows that Dr. Gomez Pimentel saw plaintiff only once, on July 25, 2024. At this telemedicine visit, Dr. Gomez Pimentel reviewed the history of plaintiff's lipoma from plaintiff's chart and from talking to him and noted that plaintiff had a surgery consultation pending to evaluate his lipoma. Dr. Gomez Pimentel also noted that the reading/report of plaintiff's June 20, 2024, MRI was incorrect – the reading/report of the MRI stated that there was no soft tissue mass on plaintiff's left forearm, but the MRI images showed a mass over the forearm area. Dr. Gomez Pimentel examined plaintiff with the assistance of an on-site medical assistant and found that he was not in apparent distress, but his left forearm "showed signs of swelling." Gomez Pimentel Decl. ¶ 5. Dr. Gomez Pimentel reassured plaintiff that a referral for a surgery evaluation of his lipoma was pending and that she would follow up on the referral and inquire when the surgery evaluation would take place. In the meantime, Dr. Gomez Pimentel advised plaintiff to continue with his current pain management options already ordered for him, including the topical NSAID, Diclofenac gel, that provided plaintiff temporary relief.

After the July 25, 2024, visit with plaintiff, Dr. Gomez Pimentel submitted another surgery consultation referral request to evaluate plaintiff's lipoma, noting in the new request that the

---

[6] Dr. Turner also is entitled to qualified immunity from damages because a reasonable health care provider could have believed that his or her conduct – continuing plaintiff's existing treatment plan for his lipoma (repeat MRI to reevaluate lipoma (scheduled for next day), surgical consultation and pain medication as needed) – was lawful under the circumstances. See Saucier, 533 U.S. at 201-02.

reading/report of plaintiff's June 20, 2024, MRI was incorrect.  This led to Dr. Goller adding an addendum to his reading/report of plaintiff's June 20, 2024, MRI on August 15, 2024, to the effect that plaintiff's MRI showed a lipoma measuring approximately 4.9 x 2.2 x 4.0 cm in plaintiff's left forearm deep to the brachial radialis muscle.  Shortly thereafter, Dr. Gomez Pimentel submitted another surgery consultation referral request to evaluate plaintiff's lipoma, with supporting 2023 and revised 2024 MRI reports showing a lipoma in plaintiff's left forearm.

Plaintiff has not set forth any probative evidence that Dr. Gomez Pimentel's treatment plan after the July 25, 2024, visit – continue with existing treatment plan for plaintiff's lipoma (continue existing pain management regimen until surgery consultation) and seek correction of June 20, 2024, MRI reading/report and follow up on pending surgery evaluation – was medically unacceptable under the circumstances and that Dr. Garcia Pimentel consciously disregarded an excessive risk to plaintiff's health.  See Toguchi, 391 F.3d at 1058.  The evidence in the record makes clear that Dr. Gomez Pimentel's treatment decision to have plaintiff continue using Diclofenac gel for pain relief until his surgery consultation was "medically acceptable" and "reasonable" under the circumstances because Diclofenac gel was reportedly effective and is much safer than NSAIDs taken by mouth.  Feinberg Decl. ¶ 46.  The evidence also makes clear that her efforts to correct the original reading/report of plaintiff's June 20. 2024, MRI and follow up on pending surgery evaluation "comported with medically acceptable standards of care." Id.

Nor has plaintiff set forth any probative evidence that Dr. Gomez Pimentel improperly canceled, delayed and/or interfered with previously scheduled pre-op and specialist appointments to remove plaintiff's lipoma.  On the contrary, the evidence in the record shows that plaintiff's surgery consultation would have been delayed further without Dr. Gomez Pimentel's efforts to correct the original reading/report of plaintiff's June 20, 2024, MRI.  Nothing in the record suggests that Dr. Gomez Pimentel canceled/delayed/interfered with plaintiff's surgery evaluation.  Accord id. ¶ 45 (claim that Dr. Gomez Pimentel improperly canceled/delayed/interfered with scheduled pre-op and specialist appointment to remove lipoma not supported by medical record).

Defendants are entitled to summary judgment on plaintiff's § 1983 claim of deliberate indifference to serious medical needs against Dr. Gomez Pimentel.  No reasonable jury could find

United States District Court
Northern District of California

based on the evidence in the record that Dr. Gomez Pimentel knew of and disregarded an excessive risk to plaintiff's health. See Farmer, 511 U.S. at 837.[7]

### 2.    Dr. Goller

Dr. Goller has not been served despite multiple efforts by the court and USMS to serve him at different locations and has not responded to plaintiff's suit. But the evidence in the record now makes clear that plaintiff's medical claim against Dr. Goller is not cognizable under § 1983.

The evidence in the record shows that Dr. Goller missed plaintiff's lipoma in the June 20, 2024, MRI images and wrote in his report, "No soft tissue mass is identified." Marcelo Decl. Ex. B. But after Dr. Yeh requested on August 12, 2024, that the radiologist "re-review" the MRI images, Dr. Goller promptly did so and, on August 15, 2024, added an addendum to his reading/report of the June 20, 2024, MRI noting,

> Comparison is now made with an outside MRI dated 3/31/2023. A lipoma measuring approximately 4.9 x 2.2 x 4.0 cm is present deep to the brachial radialis muscle.

Id.

If Dr. Goller had identified plaintiff's lipoma in his initial reading of the June 20, 2024, MRI, plaintiff may have received his surgery consultation a month or two earlier than he did. But unfortunately for plaintiff, it's well established that an "official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to infliction of punishment in violation of the Eighth Amendment. Farmer, 511 U.S. at 838. Put simply, plaintiff may have a claim for negligence or gross negligence under California law against Dr. Goller for missing plaintiff's lipoma in his initial reading/report of the June 20, 2024, MRI but that's not enough for relief under § 1983 for violation of the Eighth Amendment. See id. at 835–36 n.4.

Plaintiff's medical claim against Dr. Goller will be dismissed under the authority of 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted. See 28 U.S.C.

---

[7] Dr. Gomez Pimentel also is entitled to qualified immunity from damages because a reasonable health care provider could have believed that his or her conduct – continuing with existing treatment plan for plaintiff's lipoma (continuing existing pain management regimen until surgery consultation) and seeking correction of June 20, 2024, MRI reading/report and following up on pending surgery evaluation – was lawful under the circumstances. See Saucier, 533 U.S. at 201-02.

18

§ 1915(e)(2) (court shall dismiss case/claim at any time if it determines that case/claim fails to state a claim on which relief may be granted).  But Dr. Goller will be dismissed under the authority of Rule 4(m) without prejudice to filing a new § 1983 action against Dr. Goller for other actions or omissions that may have amounted to more than negligence or gross negligence or medical malpractice.  See Fed. R. Civ. P. 4(m) (dismissal for failure to serve a defendant despite multiple extensions of time and efforts to do so shall be without prejudice).[8]

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (ECF No. 28) is GRANTED, plaintiff's cross-motion for summary judgment (ECF No. 47) is DENIED, and Dr. Goller is DISMISSED without prejudice.

**IT IS SO ORDERED**.

Dated: March 25, 2026

_____
CHARLES R. BREYER
United States District Judge

---

[8] Plaintiff's motion for further court intervention in serving Dr. Goller (ECF No. 50) is DISMISSED as moot.

19